**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

TEMOR S. SHARIFI,                              )
                                               )
                                               )   No. 16-1090 L
                    Plaintiff,                 )
                                               )   Judge Victor J. Wolski
            v.                                 )
                                               )   *Electronically filed on April 10, 2017*
UNITED STATES OF AMERICA,                      )
                                               )
                    Defendant                  )
_____         )

<u>**UNITED STATES' MOTION TO DIMSISS**</u>

**Table of Contents**

I.      INTRODUCTION ................................................................................................................. 1

II.     BACKGROUND ................................................................................................................. 2

        A.      Factual History.................................................................................................... 2

        B.      Current Procedural History ................................................................................. 4

III.    STANDARD OF REVIEW ................................................................................................ 4

IV.     ARGUMENT ..................................................................................................................... 6

        A.      The United States Is Not Liable for Takings Effected by ISAF and
                Afghanistan ......................................................................................................... 6

        B.      The Act-of-State Doctrine Bars Plaintiff's Claim ................................................ 8

        C.      The Court Should Dismiss Plaintiff's Claim Because Plaintiff Has Still
                Failed to Identify the Land He Allegedly Owns with Specificity ....................... 10

        D.      Plaintiff Does Not Have a Valid Fifth Amendment Claim.................................. 12

V.      CONCLUSION................................................................................................................. 17

# Table of Authorities

**Cases**

*Arbaugh v. Y & H Corp.*,
  546 U.S. 500 (2006).................................................................................................. 5

*BAE Sys. Tech. Sol. & Servs., Inc. v. Republic of Korea's Def. Acquisition Program Admin.*,
  No. PWG-14-3551, 2016 WL 6167914 (D. Md. Oct. 24, 2016)................................. 8

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007)........................................................................................ 5, 11, 12

*Copar Pumice Co. v. United States*,
  No. 12-894L, 2013 WL 5273776 (Fed. Cl. Sept. 18, 2013).................................. 5, 6

*CRV Enters. v. United States*,
  626 F.3d 1241 (Fed. Cir. 2010) ............................................................................... 12

*Cuba v. Sabbatino*,
  376 U.S. 398 (1964).................................................................................................. 9

*Huntleigh USA Corp. v. United States*,
  525 F.3d 1370 (Fed. Cir. 2008) ........................................................................... 9, 12

*LaRoque v. Commonwealth of Australia*,
  No. 87-6066, 1987 WL 38392 (4th Cir. 1987) .......................................................... 9

*M. Maropakis Carpentry, Inc. v. United States*,
  609 F.3d 1323 (Fed. Cir. 2010) ................................................................................. 6

*McKesson Corp. v. Islamic Republic of Iran*,
  539 F.3d 485 (D.C. Cir. 2008)................................................................................ 8, 9

*McNutt v. Gen. Motors Acceptance Corp.*,
  298 U.S. 178 (1936).................................................................................................. 5

*Mildenberger v. United States*,
  643 F.3d 938 (Fed. Cir. 2011) .................................................................................. 5

*Oetjen v. Cent. Leather Co.*,
  246 U.S. 297 (1918).................................................................................................. 9

*PODS, Inc. v. Porta Stor, Inc.*,
  484 F.3d 1359 (Fed. Cir. 2007) ................................................................................. 5

*Ricaud v. Am. Metal Co.*,
  246 U.S. 304 (1918)............................................................................................... 9, 10

*Standard-Vacuum Oil Co. v. United States*,
  139 Ct. Cl. 113 (1957) ........................................................................................... 6, 8

*Underhill v. Hernandez*,
  168 U.S. 250 (1897)............................................................................................... 8, 9

*United States ex rel. Tenn. Valley Auth. v. Powelson*,
   319 U.S. 266 (1943) ......................................................................................... 14, 15

*W.S. Kirkpatrick & Co. v. Envtl. Tectonics Corp., Int'l*,
   493 U.S. 400 (1990) ............................................................................................... 8, 9

*Wayne ex rel. MYHUB Grp., LLC v. United States*,
   95 Fed. Cl. 475 (2010) ............................................................................................... 5

*Wyatt v. United States*,
   271 F.3d 1090 (Fed. Cir. 2001) .............................................................................. 12

**Rules**

RCFC 12(b)(6) ................................................................................................... 4, 11

RCFC 8(a) ....................................................................................................... 10, 11

RCFC 8(a)(2) .................................................................................................... 5, 10

RCFC 9(i) ................................................................................................ 4, 5, 10, 11

**Other Authorities**

*Jerib,* Self.Gutenberg.org, http://self.gutenberg.org/articles/jerib (last visited March 29, 2017) ... 2

Resolute Support History, http://www.rs.nato.int/history.html (last visited March 29, 2017) ... 1, 7

**Table of Exhibits**

| Def.'s Ex. | Description |
|---|---|
| 1 | Declaration of Sobia Khattak—attaching translations of Plaintiff's exhibits A, B, and C to the amended complaint |
| 2 | Declaration of Bruce L. Markley—attaching satellite image of COP Millet dated Nov. 12, 2011 |
| 3 | Declaration of Major Walter A. Reed—attaching License for Construction agreement |
| 4 | Declaration of Colonel Patrick R. Michaelis |
| 5 | Declaration of Colonel Barry F. Huggins—attaching Statement of Intent for the Transfer of COP Millet |
| 6 | Declaration of Saeeq Shajjan |

## I.      INTRODUCTION

Pursuant to Rule 12(b)(1) and 12(b)(6) of the United States Court of Federal Claims, the United States of America moves to dismiss Plaintiff's amended complaint.  This Court should dismiss Plaintiff's amended complaint for a number of reasons.  First, longstanding precedent holds that the United States is not liable for a Fifth Amendment taking of foreign land when allied forces effect the taking, and not the United States on its own behalf.  Because the United States in this case was acting under the direction of the International Security Assistance Force ("ISAF")[1] in support of the Afghanistan military and police forces, it cannot be liable for a taking.  Second, this Court does not have subject matter jurisdiction under the act-of-state doctrine because Plaintiff's claim would require this Court to invalidate an act of the Afghanistan government.  Afghanistan represented that the Afghan government was the rightful and legal owner of the land used to build the military base described in the complaint.  To the extent Plaintiff believes he is the owner of that property, his dispute is with the Afghan government under Afghan law—not the United States government.  Third, even after amending the complaint in response to an order for a more definite statement, Plaintiff has failed to specifically identify where his alleged property is located and whether he is the legal owner of that land under Afghan law.  Without specifically identifying these details, Plaintiff has failed to state a claim for which relief can be granted.  And fourth, Plaintiff does not have a compensable property interest because he did not own any land on the date of the alleged taking under the laws of Afghanistan.  As such, Plaintiff's Fifth Amendment takings claim fails as a matter of law.  Accordingly, the United States requests that this Court dismiss Plaintiff's amended complaint.

---

[1] ISAF was the NATO-led coalition effort in Afghanistan.  ISAF took command of all international forces in southern Afghanistan (the future location of Combat Outpost ("COP") Millet) by December 8, 2005—nearly five years before ISAF helped Afghanistan forces construct COP Millet.  *See* http://www.rs.nato.int/history.html (last visited March 29, 2017).

## II.     BACKGROUND

### A.     **Factual History**

Plaintiff alleges that he is a United States citizen and owns real property in rural Afghanistan located near the village of Deh-e-Kowchay in the Arghandab district of the Kanadahar province.  Am. Compl. ¶¶ 2, 14, ECF No. 10.  Plaintiff does not provide coordinates of the land he allegedly owns.  Plaintiff further alleges that the United States Army ("Army") took 6 *jeribs*[2] of his land to build Combat Outpost ("COP") Millet in October 2010 without just compensation but that COP Millet is currently occupied by the government of Afghanistan.  *Id.* ¶ 14; Am. Compl., Ex. C; Decl. of Sobia Khattak, Ex. 1.C. (Def.'s Ex. 1) (the United States' translation of Plaintiff's Exhibit C).  COP Millet was approximately 5.8 *jeribs* in size.  *See* Decl. of Bruce L. Markley ¶ 4, Ex. A (Def.'s Ex. 2).[3]

According to a former company commander assigned to COP Millet, Major Walter A. Reed, ISAF established COP Millet shortly before Thanksgiving 2010.  Decl. of Walter A. Reed ¶ 9 (Def.'s Ex. 3).  Prior to that time, ISAF and Afghan forces (hereinafter "Allied Forces") stationed troops in abandoned buildings within the village of Deh-e-Kowchay.  *Id.* ¶¶ 3-5.  ISAF exercised command and control over United States Army soldiers and personnel in the Arghandab River Valley and directed them in support of Afghanistan's soldiers and police force. *Id.* ¶ 3.

---

[2] An Afghan *jerib* is the equivalent of 2000 square meters or 0.4942 acres.  *See* http://self.gutenberg.org/articles/jerib (last visited March 29, 2017). A 6-*jerib* parcel of land is slightly less than 3 acres of land.

[3] Plaintiff did not allege that COP Millet was 6 *jeribs* in size until after the United States stated in its motion for a more definite statement that it believed COP Millet was less than 6 *jeribs* in size. *See* Pl.'s Compl. (ECF No. 1); Def.'s Motion for a More Definite Statement at 2 (ECF No. 5).

The village of Deh-e-Kowchay was strategically important to Allied Forces and the Taliban because it was located next to a key river crossing.  *Id.* ¶¶ 4-6.  The Taliban destroyed the buildings used by Allied Forces in Deh-e-Kowchay with improvised explosive devices ("IEDs"), killing one U.S. soldier and endangering civilians in the village.  *Id.* ¶ 5.  This led the Afghan National Army, Afghan National Police, and ISAF to drive the Taliban from a large field approximately 250 meters southwest of Deh-e-Kowchay.  *Id.* ¶¶ 6, 9.  The Taliban was using the abandoned buildings on that field to warehouse IED materials.  *Id.* ¶¶ 6-7.  After securing the location, "ISAF engineers de-mined the area and cleared it for occupation, and local Afghan contractors executed the majority of the work on [COP Millet]."  *Id.* ¶ 9.  It took approximately one week to establish COP Millet.  *Id.* ¶¶ 9-10.

Before any Army personnel helped establish COP Millet on behalf of ISAF, on October 18, 2010, the United States entered a License for Construction agreement with the government of Afghanistan (hereinafter "Agreement").  *Id.* ¶ 9, Ex. A.  The Agreement grants the Army the right to enter the land and help construct COP Millet "to alleviate the strain on the population caused by the current Combat Outpost" inside Deh-e-Kowchay.  *Id.* at 1 of 2.  The Agreement states that the governor of the Arghandab district "wants to buy 300 by 300 meters of land near Deh-e-Kowchay . . ." and identifies the land using the following coordinates: MGRS 41R QR 4862 0248, MGRS 41R QR 4859 0255, MRGS 41R QR 4868 0226, and MGRS 41R QR 4872 0258.  *Id.*  In the Agreement, the Army states that after that purchase, the Army "will move the necessary establishments to new boundary line" with certain conditions.  *Id.*  One of the conditions is that the "HOST NATION [Afghanistan] warrants that it is the rightful and legal owner of the herein described premises and has the legal right to enter into this [Agreement]."  *Id.*

As admitted by Plaintiff, the Afghanistan government currently is in sole possession of COP Millet.  *See* Am. Compl., Ex. C; Def.'s Ex. 1, Ex. 1.C; *see also* Decl. of Patrick R. Michaelis ¶ 4 (Def.'s Ex. 4); Decl. of Barry F. Huggins ¶¶ 4-5, Ex. A (Def.'s Ex. 5).  ISAF transferred COP Millet to Afghanistan forces by September 2012.  *See* Def.'s Ex. 3 ¶ 4.  As part of that transfer, Afghanistan absolved "ISAF forces of any responsibility for the facility, contracts for services, or the land on which [COP Millet] is located."  Def.'s Ex. 5 ¶¶ 4-5, Ex. A.

B.  **Current Procedural History**

Plaintiff filed his complaint on August 31, 2016.  ECF No. 1.  The United States then moved for a more definite statement on October 24, 2016 (ECF No. 5) arguing that Plaintiff's complaint was "vague and ambiguous because it [did] not specifically identify the property interest allegedly taken by the United States . . .."  ECF No. 5 at 2.  After considering Plaintiff's response (ECF No. 6) and the United States' reply (ECF No. 7), the Court granted the United States' motion and ordered Plaintiff to "specifically identif[y] the land that he owns that was allegedly taken" through documentation or description to satisfy RCFC 9(i).  *See* February 1, 2017 Order, ECF No. 9 at 1-2.  Plaintiff subsequently filed an amended complaint on February 15, 2017 (ECF No. 10), to which he attached several documents that are discussed in this brief.  None of those documents include a metes and bounds or similar description of the property as is common in the United States.  None of those documents include specific coordinates of the property allegedly owned by Plaintiff.  And none of those documents are sufficient to state a viable takings claim.

III.  **STANDARD OF REVIEW**

If a plaintiff's complaint fails to state a claim upon which relief can be granted, the Court must dismiss that claim.  *See* RCFC 12(b)(6).  For a complaint to state a valid claim under the rules, a plaintiff must include "a short and plain statement of the claim showing that the pleader

is entitled to relief." RCFC 8(a)(2). For a Fifth Amendment takings claim, this means that a plaintiff must identify the specific property interest allegedly taken by the United States. *See* RCFC 9(i) (plaintiff must "identify the specific property interest alleged to have been taken by the United States."). Failure to meet these requirements is grounds for dismissal. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007) (holding that plaintiff must plead "enough facts to state a claim to relief that is plausible on its face," which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action . . .." (citation omitted)). When the factual allegations of a complaint, even if true, do not support a claim for relief, this basic deficiency should be exposed at the point of minimum expenditure of time and money by the court and the parties. *Id.* at 557-58.

Additionally, "[w]hether the court possesses jurisdiction to decide the merits of a case is a threshold matter." *Copar Pumice Co. v. United States*, No. 12-894L, 2013 WL 5273776, at \*9 (Fed. Cl. Sept. 18, 2013) (citing *PODS, Inc. v. Porta Stor, Inc.*, 484 F.3d 1359, 1365 (Fed. Cir. 2007)). "Because jurisdiction is a threshold matter, a case can proceed no further if a court lacks jurisdiction to hear it." *Copar Pumice Co.*, 2013 WL 5273776, at \*9 (citing *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 514 (2006)).

When deciding a motion to dismiss based on lack of subject matter jurisdiction "the court will 'normally consider the facts alleged in the complaint to be true and correct,'" but "if [plaintiff's] allegations of jurisdictional facts are challenged by his adversary in any appropriate manner, [plaintiff] must support them by competent proof." *Wayne ex rel. MYHUB Grp., LLC v. United States*, 95 Fed. Cl. 475, 477 (2010) (quoting *McNutt v. Gen. Motors Acceptance Corp.*, 298 U.S. 178, 189 (1936)); *see also Mildenberger v. United States*, 643 F.3d 938, 944 (Fed. Cir. 2011) ("When the factual underpinnings of the Court of Federal Claims' jurisdiction are

contested, the Court of Federal Claims 'may weigh relevant evidence.'" (internal citation

omitted)); *Copar Pumice Co.*, 2013 WL 5273776, at *10 ("in considering a motion to dismiss for

lack of subject matter jurisdiction, a court may look beyond the pleadings and 'inquire into

jurisdictional facts' to determine whether jurisdiction exists, without converting a motion to

dismiss into a motion for summary judgment" (citations omitted)).  Plaintiff bears the burden of

proving that the Court of Federal Claims possesses jurisdiction over his complaint.  *Id.* at *9

(citing *M. Maropakis Carpentry, Inc. v. United States*, 609 F.3d 1323, 1327 (Fed. Cir. 2010)).

Plaintiff must meet this burden of proving jurisdiction by a preponderance of the evidence.  *Id.*

## IV.   ARGUMENT

### A.   The United States Is Not Liable for Takings Effected by ISAF and Afghanistan

Plaintiff has failed to state a claim for which relief can be granted because the United

States is not liable under the Fifth Amendment for takings carried out by ISAF and the

Afghanistan government—even if the United States took a leading role as part of a coalition or

joint operation.  *See Standard-Vacuum Oil Co. v. United States*, 139 Ct. Cl. 113, 114-16 (1957).

In *Standard-Vacuum*, a United States general, General Douglas MacArthur, led the allied powers

during the occupation of Japan after World War II.  *Id.* at 115.  As a result of General

MacArthur's orders, the allied powers took the property of a United States corporation and the

corporation filed a Fifth Amendment takings claim.  *Id.* at 114-16.  The United States Court of

Claims held that no compensable taking occurred because the property was taken by the allied

powers, not the United States.  *Id.* at 116.  The court further stated that to "hold otherwise"

would cause "the United States to bear almost the entire financial burden" of a joint effort and

the court was not prepared to support that outcome.  *Id.*  The court sympathized that the plaintiff

received no compensation but stated that "the unfortunate circumstances of war very often lead

not only to human misery but to financial loss as well."  *Id.*

This long-standing precedent, which is binding in the Court of Federal Claims, directly applies to the lawsuit brought by Plaintiff.  Just as in *Standard-Vacuum*, an allied force—not the United States—is responsible for the alleged taking of Plaintiff's land.  The Afghan National Army, Afghan National Police, and ISAF secured the location of COP Millet by force from the Taliban and erected the HESCO perimeter walls in a joint military effort.  *See* Def.'s Ex. 3 ¶¶ 9-10.  The United States entire involvement in helping establish COP Millet was in support of its directives as part of ISAF—the NATO-led coalition effort in Afghanistan.  *Id.* ¶¶ 3, 9.[4] According to *Standard-Vacuum*, the United States is not liable for a taking because such an outcome would unjustly put the "entire financial burden" on the United States for the actions of Afghanistan itself and ISAF.  Indeed, holding the United States liable here would potentially expose it to takings liability whenever it assists other countries in combined military operations.

If any specific country is liable for a taking of property, it is Afghanistan.  The facts show that the establishment of COP Millet was a coordinated effort between Afghan forces and ISAF, with the full knowledge and support of the Afghan government.  *See* Def.'s Ex. 3 ¶¶ 7, 9; Def.'s Ex. 3, Ex. A 1 of 2 (COP Millet was built "to alleviate the strain on the population caused by the current Combat Outpost . . ." in Deh-e-Kowchay).  Not only was the establishment of COP Millet a joint effort, the Afghan forces stationed at COP Millet outnumbered the ISAF forces. *See* Def.'s Ex. 3 ¶ 10 ("portion of the COP used for the Afghan National Army unit was built . . ." first and housed a platoon of 40 Afghan soldiers, which was more than the 28t to 30 United States soldiers stationed there).  Additionally, the only force to occupy COP Millet from its inception until present is Afghanistan, and it has been and the sole occupant since September

---

[4] As previously mentioned, ISAF took command of all international forces in southern Afghanistan almost five years before ISAF helped Afghanistan forces construct COP Millet. *See* http://www.rs.nato.int/history.html (last visited March 29, 2017).

2012.  *See* Def.'s Ex. 5 ¶ 4; Def.'s Ex. 4 ¶ 4.  Currently, Afghanistan uses COP Millet as a headquarters for the Afghan police.  *See* Def.'s Ex. 5 ¶ 4; Def.'s Ex. 4 ¶ 4.  Furthermore, when ISAF transferred all its interests in COP Millet to the Afghan forces, the Afghan government "absolve[d] ISAF forces of any responsibility for the facility, contracts for services, or the land on which [COP Millet was] located."  Def.'s Ex. 5 ¶ 4, Ex. A 1 of 2.  In this light, holding the United States liable for a taking would be a serious miscarriage of justice, would impose the "entire financial burden" of a coalition effort on the United States, and would be contrary to binding precedent.  *See Standard-Vacuum*, 139 Ct. Cl. 113 at 116.

B.     **The Act-of-State Doctrine Bars Plaintiff's Claim**

The Court should also dismiss this case because the act-of-state doctrine requires this Court to refrain from exercising jurisdiction over Plaintiff's claim.  The act-of-state doctrine requires United States courts "to refrain from exercising jurisdiction where 'the relief sought or the defense interposed . . . require[s] a court in the United States to declare invalid the official act of a foreign sovereign performed within its own territory.'"  *BAE Sys. Tech. Sol. & Servs., Inc. v. Republic of Korea's Def. Acquisition Program Admin.*, No. PWG-14-3551, 2016 WL 6167914, at \*6 (D. Md. Oct. 24, 2016) (quoting *W.S. Kirkpatrick & Co. v. Envtl. Tectonics Corp., Int'l*, 493 U.S. 400, 405 (1990)); *see also Underhill v. Hernandez*, 168 U.S. 250, 252 (1897) ("Every sovereign state is bound to respect the independence of every other sovereign state, and the courts of one country will not sit in judgment on the acts of the government of another done within its territory."); *McKesson Corp. v. Islamic Republic of Iran*, 539 F.3d 485, 491 (D.C. Cir. 2008) ("The act of state doctrine precludes domestic courts from inquiring into the validity of the public acts that a recognized foreign sovereign power committed within its own territory" (quotation marks and citation omitted)).  When a "foreign government has acted in a given way on the subject-matter of the litigation, the details of such action or the merit of the result cannot

8

be questioned but must be accepted by our courts as a rule for their decision." *Ricaud v. Am. Metal Co.*, 246 U.S. 304, 309 (1918) (holding that title to the property "must be determined by the result of the action taken by the military authorities of Mexico . . ." and not the United States even though the action involved the rights of an American citizen).[5]

The act-of-state doctrine requires this Court to refrain from exercising jurisdiction in this case because Plaintiff's claim requires this Court to invalidate an act taken by the government of Afghanistan. *See W.S. Kirkpatrick & Co.*, 493 U.S. at 405; *McKesson Corp.*, 539 F.3d at 491. In an October 18, 2010 License for Construction agreement, the government of Afghanistan represented to the United States Army that the Afghanistan government was the "rightful and legal owner" of the land subsequently used for COP Millet.  Def.'s Ex. 3 ¶ 9; Def.'s Ex. 3, Ex. A 1 of 2.  In reliance on that representation, ISAF engineers helped the Afghan National Army and the Afghan National Police establish COP Millet.  Def.'s Ex. 3 ¶¶ 8-9.  Because a threshold issue in a Fifth Amendment takings case is whether a plaintiff owns the land allegedly taken, for Plaintiff's claims to be valid, this Court would have to rule that Plaintiff owned the land taken for the construction of COP Millet—land claimed by the Afghan government.  *See Huntleigh USA Corp. v. United States*, 525 F.3d 1370, 1377-78 (Fed. Cir. 2008).  To do so would require this Court to invalidate the official position of Afghanistan as represented in the License for Construction—where Afghanistan stated that it owned the land used for COP Millet. Accordingly, this Court should dismiss Plaintiff's claim under the act-of-state doctrine.

---

[5] The Supreme Court has applied the doctrine to bar review of tort claims predicated on an illegal detention and the legality of government seizures and expropriations of property.  *See Underhill*, 168 U.S. at 254; *Oetjen v. Cent. Leather Co.*, 246 U.S. 297, 304 (1918); *Ricaud*, 246 U.S. at 310; *Banco Nacionale de Cuba v. Sabbatino*, 376 U.S. 398, 439 (1964). The Fourth Circuit has applied the doctrine to bar review of a foreign deportation.  *LaRoque v. Commonwealth of Australia*, No. 87-6066, 1987 WL 38392, at *1 (4th Cir. 1987) (per curiam).

To the extent Plaintiff actually does own land encompassed by COP Millet, and not the Afghan government, Plaintiff must first prove his claim in the courts of Afghanistan. *See Ricaud*, 246 U.S. at 309. This is further supported by the Declaration of Saeeq Shajjan in which Mr. Shajjan, an Afghan law expert, concludes that none of the documents attached to the amended complaint support Plaintiff's ownership claims absent approval from an Afghan court or the office of Hoqooq. *See* Decl. of Saeeq Shajjan ¶ 6 (Def.'s Ex. 6).

C.      **The Court Should Dismiss Plaintiff's Claim Because Plaintiff Has Still Failed to Identify the Land He Allegedly Owns with Specificity**

The Court should dismiss Plaintiff's claim because even after the Court granted the United States' motion for a more definite statement, Plaintiff has still failed to "identify the specific property interest alleged to have been taken by the United States" as required RCFC 9(i), and the Court's February 1, 2017 order (ECF No. 8). The requirement to specifically identify the land a plaintiff owns is not optional and it is in addition to RCFC 8(a)'s requirement that a plaintiff give "a short and plain statement of the claim showing that the pleader is entitled to relief." RCFC 8(a)(2). Plaintiff cannot satisfy these requirements without giving the specific location of his land and stating that he is the legal owner of that land. RCFC 9(i).

None of the allegations in, or attachments to, the amended complaint satisfy Plaintiff's burden of identifying the land he allegedly owns in a way that would entitle him to relief under the Fifth Amendment. Indeed, the amended complaint suffers from the same lack of specificity as Plaintiff's original complaint. The amended complaint does not include a legal description of Plaintiff's property, a deed, coordinates, or another document that would allow the United States to identify the location of Plaintiff's land. Plaintiff's failure to identify the location of the land he allegedly owns with enough specificity to determine whether it overlaps with COP Millet is fatal to his claim. Without that specificity, Plaintiff has failed to state a claim for which relief

can be granted.  *See* RCFC 12(b)(6); *see also* RCFC 8(a); RCFC 9(i); *Twombly*, 550 U.S. at 555, 570.

The documents attached to the amended complaint do not provide any specificity as to the location of the land allegedly owned by the Plaintiff.  Exhibits A, B, and C to the amended complaint merely refer to Plaintiff's land as located in Deh-e-Kowchay, Arghandab.[6]  Def.'s Ex. 1, Exs. 1.A-1.C (United States' translations); Am. Compl., Exs. A-C.  COP Millet is not located within the village of Deh-e-Kowchay, the Allied Forces purposely established COP Millet outside the village after their outpost within Deh-e-Kowchay was destroyed by IEDs.  *See* Def.'s Ex. 3 ¶¶ 5-6.

Plaintiff's naked assertion that COP Millet "was built entirely on Plaintiff's property . . ." (Am. Compl. ¶ 14) also fails to meet *Twombly's* requirement to plead "enough facts to state a claim to relief that is plausible on its face" with "more than labels and conclusions."  *Twombly*, 550 U.S. at 555, 570.  In support of his claim, Plaintiff includes as Exhibit C a handwritten letter from Plaintiff to the district governor of Arghandab, drafted on December 12, 2016 (several months after filing this case and after the parties fully briefed the United States' motion for a more definite statement).  The letter includes the following language:

> We, as the inheritors of Mohammad Sharif Khan and (grandsons of Abdul Ghafoor Khan) confirm to the following statement on April 19, 2004 between our family members.

> We accept the divided land property of Arghandab district, located in Tabin (Murghan) (Deh Kochi) area.  A piece of land located in Deh Kochi with the size of 6 Jerib as part of this land which I (Temor Shah Sharifi) inherited from my grandfather is taken by the US Army since October 2010 and a military base was built on the land.  Now the structure is transferred to the Afghan military.  The location of the land and its specifications are clearly shown on the sketch attached.

---

[6] "Deh Kochi" appears to be another phonetic spelling the village already referred to as "Deh-e-Kowchay" in the Arghandab district.  That spelling appears in several of the translated documents.

We kindly request you to verify the sketch and the ownership of this land (of 6 Jerib) belonging to myself Temor Shah Sharifi. We really appreciate your attention in this matter.

*See* Def.'s Ex. 1, Ex. 1.C.  The hand-drawn sketch referred to in the letter includes measurements of different parcels of land allegedly owned by Plaintiff and his siblings.  That sketch, however, does not does not include landmarks, like roads or other topographical features, that would allow the United States or this Court to identify the location of Plaintiff's property.  Without a more specific description of the land allegedly owned by Plaintiff,  Plaintiff's claim is not "plausible on its face."  *Twombly*, 550 U.S.at 555, 570.   Accordingly, this Court should dismiss Plaintiff's claim for failure to state a claim for which relief can be granted.

### D.    Plaintiff Does Not Have a Valid Fifth Amendment Claim

Lastly, the Court should also dismiss Plaintiff's claim because Plaintiff did not own the land used to build COP Millet on the date of the alleged taking.  Bedrock Fifth Amendment law requires that for a plaintiff to have a valid claim, the plaintiff must first establish that he has a valid property interest that the government has allegedly taken.  *See Huntleigh USA Corp.*, 525 F.3d at 1377-78.  Courts have uniformly held that this means that a plaintiff must hold that "valid property interest at the time of the taking [to be] entitled to compensation."  *CRV Enters. v. United States*, 626 F.3d 1241, 1249 (Fed. Cir. 2010) (quotation marks and citations omitted); *Wyatt v. United States*, 271 F.3d 1090, 1096 (Fed. Cir. 2001) ("only persons with a valid property interest at the time of the taking are entitled to compensation." (citations omitted)); *W. Chelsea Bldgs., LLC v. United States*, 109 Fed. Cl. 5, 16 (2013), *aff'd* (Feb. 12, 2014) (dismissing claim for lack of jurisdiction because plaintiff did not own the property at the time of the taking).

Here, Plaintiff does not have a valid claim because, by Plaintiff's owns admission, Plaintiff was not the fee title owner under Afghan law of the land used to build COP Millet. Plaintiff asserts that "Afghan government records" prove that "the land on which [COP] Millet

was built belonged to Haji Muhammed Sharif, Plaintiff's grandfather."  Am. Compl. ¶ 5.

Plaintiff never asserts that he is the legal owner of the land owned by his grandfather under

Afghan law, and does not provide any adequate documents establishing his ownership at the time

of the alleged taking in October 2010.[7]  As such, Plaintiff does not have a valid property interest

under the Fifth Amendment.

Additionally, every document Plaintiff attached to the amended complaint is insufficient

under Afghan law to support a valid Fifth Amendment takings claim.  All of the documents

included as Plaintiff's Exhibits A, B, and C are petitions purportedly sent to the district governor

of Arghandab or the provincial governor of Kandahar by Plaintiff or his siblings.  Under Afghan

law "provincial and district governors are not authorized by the law of Afghanistan to look into

civil claims or issue instructions for that purpose."  *See* Def.'s Ex. 6 ¶ 6(f).  Instead, they are

"duty bound to refer received petitions on civil rights to relevant office of Hoqooq."  *Id.* ¶ 6(c).[8]

Accordingly, because Plaintiff's petition letters all involved civil matters—*i.e.* property

ownership, requests for compensation, and an inheritance agreement—the provincial and district

governors had no authority to review or verify those petitions.  As such, any decision or

statement made by the district or provincial governors does not carry any weight before

Afghanistan judicial institutions, and cannot serve as a basis for a Fifth Amendment claim here.

---

[7] Plaintiff alleges that his grandfather, Haji Muhammed Sharif, was the original owner of a 38-*jerib* parcel of land in Deh-e-Kowchay that Plaintiff's father "acquired" at some undisclosed time.  Am. Compl ¶¶ 4-5.  Plaintiff does not include a document transferring ownership of the parcel from Plaintiff's grandfather to his father.  Plaintiff also does not provide coordinates of the 38-*jerib* parcel, or use landmarks like roads or other features to identify the location of the 38-*jerib* parcel.  This is fatal to Plaintiff's claim because Plaintiff's allegations are all premised on the allegation that "the land on which [COP] Millet was built belonged to Haji Muhammed Sharif."  Am. Compl. ¶ 5

[8] Hoqooq is a phonetic spelling and is also spelled 'Huquq' in some translations into English.

*See, e.g.*, *United States ex rel. Tenn. Valley Auth. v. Powelson*, 319 U.S. 266, 279 (1943) ("Though the meaning of 'property' as used . . . in the Fifth Amendment is a federal question, it will normally obtain its content by reference to local law.").  As stated in Mr. Shajjan's declaration, "[t]hese letters should have not been entertained at all and instead the applicant should have been advised to either go to the local courts or the Hoqooq department."  Def.'s Ex. 6 ¶ 6(g).  Thus, because those documents are inadequate to support a claim of ownership under Afghan law, they also cannot support a Fifth Amendment takings claim in the United States.

Indeed, even a cursory review of those documents demonstrates that Plaintiff has not supported his claim of ownership on the date of the alleged taking.  For example, the December 7, 2010 letter is a request from the "Inheritors of Haji Mohammad Sharif Khan" for compensation from the government of Afghanistan for the alleged occupation of a 6-*jerib* parcel of land by the United States Army "located in Deh Kochi, Arghandab."  Def.'s Ex. 1, Ex. 1.A (United States' Translation of Plaintiff's Exhibit A).  The purported response from the district governor states that a 6-*jerib* parcel of land belongs to Haji Mohammed Sharif, Plaintiff's grandfather—not the Plaintiff.  Am. Compl., Ex. A.[9]  Even if correspondence with the district governor held weight under Afghan law, this correspondence would only prove that months after the alleged taking, the legal owner of the property was still Plaintiff's grandfather, not Plaintiff.  Also, the correspondence indicates that Plaintiff and his siblings believed that the Afghan

---

[9] This response from the governor was not in the native-language documents filed by the Plaintiff but is present in Plaintiff's translation.  The translator of the United States did not include this language because it was not present in the native-language documents filed by Plaintiff.

government was responsible for the alleged taking of their property because they sought compensation from the Afghan government, not the United States.[10]

Likewise, the purported inheritance agreement in Plaintiff's Exhibit B is not valid under Afghan law and does not prove that Plaintiff owned the land used to build COP Millet on the date of the alleged taking.  The agreement states that Plaintiff and his sisters jointly own two segments of land, one of which is a 6-*jerib* parcel of farm land.  Def.'s Ex. 1, Ex. 1.B (United States' Translation of Plaintiff's Exhibit B).  The agreement was purportedly sent to the governor of the Arghandab district, who confirmed "that this inheritance agreement [was] made between the parties."  *Id.*  This agreement is invalid because it does not include a title deed or other legal documents as required by Afghan law, nor have the heirs entered a *Hasr-e-Werasat* to establish that each person identified in the agreement was a legal heir of Plaintiff's father.  *See id.*; Def.'s Ex. 6 ¶¶ 6(h)-6(i).  It is also invalid because under Afghan law because district governors are not authorized by the laws of Afghanistan to certify any inheritance agreement.  Def.'s Ex. 6 ¶ 6(i).  An inheritance agreement must be taken to a court to certify the agreement after determining that the parties are the real owners of the property.  *See id.* ¶¶ 6(h)-6(i).[11]  Additionally, there is also no indication that Plaintiff's father was the legitimate heir of Plaintiff's grandfather, who

---

[10] The remaining correspondence in Exhibit A to the amended complaint also fails for similar reasons.  Notably, none of the documents actually identify where the land allegedly owned by Plaintiff, or his grandfather, is located with the sufficient degree of specificity.  The June 3, 2012 correspondence does not even state that the Plaintiff or his grandfather owned the land used for COP Millet.  *See* Def.'s Ex. 1, Ex. 1.A.  The third letter, undated, culminates in the office of provincial governor asking the district governor to "resolve this issue according to the law and regulations."  *Id.*  Nothing in this correspondence supports the Fifth Amendment's requirement that Plaintiff own the property allegedly taken on the date of the alleged taking.

[11] An Afghan court in such a circumstance would conduct its own inquiry and would ask the parties to provide a title deed to establish their ownership.  Def.'s Ex. 6 ¶ 6(i).

Plaintiff alleges was the original owner of the land.  Because of these fatal problems, this purported inheritance agreement is invalid under Afghan law and does not convey any legitimate title to Plaintiff.  Therefore, the agreement does not support a claim that Plaintiff owned the land used for COP Millet on the date of the alleged taking.[12]

Similarly, as already discussed in Section IV.C, the December 12, 2016 correspondence and draft sketch of the properties allegedly owned by Plaintiff and his siblings does not support a valid Fifth Amendment takings claim.  *See* Def.'s Ex. 1, Ex. 1.C.  As with the other exhibits to the amended complaint, this correspondence with the district governor does not verify Plaintiff's ownership of any land because district governors have no authority to verify civil claims. District governors are, instead, duty bound to refer petitions—like Plaintiff's letter—to the office of Hoqooq.  *See* Def.'s Ex. 6 ¶ 6(c).  Also, nothing in Plaintiff's Exhibit C gives any basis for why Plaintiff owns the 6-*jerib* parcel of land by way of a title deed, court-approved inheritance agreement, or other validating document.  This correspondence is nothing more than a post-hoc attempt by Plaintiff to resolve fatal errors with his original complaint that fails to prove that Plaintiff owns land under Afghan law or even identify where Plaintiff's land is specifically located.

Therefore, the Court should dismiss Plaintiff's claim because nothing in the amended complaint or Plaintiff's Exhibits A, B, or C constitutes a valid Fifth Amendment claim.  Plaintiff

---

[12] Even if it did covey legitimate title to Plaintiff, which it does not, the agreement is so vague that it is impossible to tell where Plaintiff's property is located.  There are no coordinates, no legal property descriptions, or landmarks listed for reference.  Beyond that, the agreement states that Plaintiff's sisters own the same 13.5 *jeribs* as Plaintiff, but the agreement does not specify the details of that joint ownership or whether ownership was divided.  As such, it is impossible to tell whether the land actually overlapped with the land used to build COP Millet and whether Plaintiff owned that land.

has not offered any valid evidence under Afghanistan law that he actually owned land on the date

of the alleged taking in October 2010 or that his land actually was used to build COP Millet.

## V.    CONCLUSION

For all of these reasons, the Court should grant the United States' motion to dismiss.

First, the United States is no liable under the Fifth Amendment for takings of foreign land when

acting as part of a joint military operation or coalition.  Second, the act-of-state doctrine bars

jurisdiction because this Court would have to invalidate an act by the government of Afghanistan

to hold that Plaintiff has a valid property interest.  Third, Plaintiff has still failed to meet basic

pleadings standards of specifically identifying the property interest allegedly taken by the United

States.  And fourth, Plaintiff's claim fails as a matter of law because he did not own any land on

the date of the alleged taking under the laws of Afghanistan.


Dated:   April 10, 2017                              Respectfully submitted,

                                                     JEFFREY H. WOOD
                                                     Acting Assistant Attorney General
                                                     Environment & Natural Resources Division

                                                     By */s/ Edward C. Thomas*
                                                     EDWARD C. THOMAS
                                                     U.S. Department of Justice
                                                     Environment & Natural Resources Division
                                                     Natural Resources Section
                                                     P.O. Box 7611
                                                     Washington, D.C. 20044-7611
                                                     (202) 305-0239
                                                     (202) 305-0506 (facsimile)
                                                     edward.c.thomas@usdoj.gov

                                                     *Counsel for United States*

*Of Counsel:*

Major Jennifer M. Healy
Litigation Attorney
United States Army Legal Services Agency
Litigation Division, General Litigation Branch